RECORD NO. 12-5155

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

### For The District of Columbia Circuit

# FISHER-CAL INDUSTRIES, INC.,

*Plaintiff – Appellant*,

**v.**

# UNITED STATES OF AMERICA;
# UNITED STATES DEPARTMENT OF DEFENSE;
# DEPARTMENT OF THE AIR FORCE,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

## PAGE PROOF REPLY BRIEF OF APPELLANT

_____

**Lawrence J. Sklute**
SKLUTE & ASSOCIATES
**1150 Connecticut Avenue, N.W., 9th Floor**
**Washington, D.C. 20036**
**(202) 637-1223**

*Counsel for Appellant*

THE LEX GROUP[DC] ♦ 1825 K Street, N.W. ♦ Suite 103 ♦ Washington, D.C. 20006
(202) 955-0001 ♦ (800) 856-4419 ♦ Fax: (202) 955-0022 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................... iv

GLOSSARY OF ABREVIATIONS............................................................. vii

SUMMARY OF REPLY ARGUMENT ....................................................... 1

REPLY ARGUMENT .................................................................................. 3

    A.    THE DECISION THAT THE GOVERNMENT IS MAKING UNDER 10 U.S.C. §§ 129A, 2463 IS WHETHER TO USE INSOURCING OR THE CONTRACTING ACQUISITION PROCESS TO OBTAIN THE MULTIMEDIA SERVICES, AND APPELLANT DID NOT ARGUE THAT THIS DECISION IS MADE BEFORE APPELLEE DECIDES WHETHER IT HAS A NEED FOR THE SERVICES ............ 3

    B.    APPELLEE'S INTERPRETATION OF 41 U.S.C. § 111'S DEFINITION OF PROCUREMENT FAILS TO COMPORT WITH CASE PRECEDENT AND FUNDAMENTAL CANNONS OF CONSTRUCTION, CREATING CONFLICTS WITH THE STATUTE AND LEGISLATIVE INTENT............................................................ 5

        1.    Based on the First and Third Clauses, Section 111's Use of the Term "Acquiring" Reflects that it Pertains Solely to Contracting ........................................ 6

        2.    Appellate and USCFC Case Law Support Fisher-Cal's Interpretation of § 111's Definition of Procurement .................................................................. 10

3.    The Government's Deliberation of Whether There is a Need for Services is Not Encompassed Within Section 111's Second Clause Based on the Language Contained in the Statute's First and Second Clauses ............................................................. 11

4.    Neither the Government's Deliberation of Whether There is a Need for the Services Nor its Deliberation of How to Obtain the Them (Insourcing *versus* Contracting Acquisition Process) is Encompassed Within § 111's First Clause .......................................................................... 12

5.    The Courts Have Rejected the Same Arguments That the Government is Making in this Appeal ............ 15

6.    Appellant is Not Arguing that the Government's Decision as to How to Obtain the Services is Made Before it Decides Whether There is a Need for the Services ....................................................................... 17

C.    THE VERO AND ROTHE DECISIONS PERPETUATE A MISAPPLICATION OF DISTRIBUTED SOLUTIONS II BECAUSE THEY RELY UPON THE HARRIS DECISION WHERE THE MISAPPLICATION FIRST BEGAN ...................................... 18

D.    APPELLEE MADE VARIOUS MISTATATEMENTS CONCERNING VARIOUS CASES ....................................... 20

E.    FISHER-CAL HAS ARTICLE III STANDING REGARDLESS OF ITS INTERESTED PARTY STATUS AT THE USCFC AS THE TEST FOR EACH IS DIFFERENT ...................................................................... 23

F.    THE 2009 OMNIBUS APPROPRIATIONS ACT IN CONJUNCTION WITH 10 U.S.C. § 2461 DO NOT CREATE A "FUNDING BAR" TO FISHER-CAL'S CLAIM ...................................................................... 25

G.    FISHER-CAL'S ACTION IS NOT MOOT ............................ 27

H.    FISHER-CAL HAS PRUDENTIAL STANDING.................. 29

CONCLUSION............................................................................. 31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Am. Chiropractic Ass's Inc. v. Leavitt,
    431 F.3d 812 (D.C. Cir. 2005) ............................................................ 31

American Federation of Government Employees v. United States,
    258 F.3d 1294 (Fed. Cir. 2001) .......................................................... 23

Bates v. United States,
    552 U.S. 23 (1997) ............................................................................. 11

*Distributed Solutions Inc. v. United States,
    539 F.3d 1340 (Fed. Cir. 2008) ...................... 10, 12, 16, 18, 20, 21, 22

Fund for Animals v. Bureau of Land Management,
    357 F. Supp. 2d 225 (D.D.C. Sept. 7, 2004) ................................. 27, 28

Hallmark-Phoenix 3 v. United States,
    99 Fed. Cl. 65 (2011)......................................................................... 31

Harris Enters., Inc. v. U.S. Dep't of Defense,
    No. 10-cv-573,
    2011 U.S. Dist. LEXIS 143574
    (W.D. Tex. Oct. 12, 2010)............................................. 8, 9, 18, 19, 20

In re Navy Chaplaincy,
    697 F.3d 1171 (D.C. Cir. 2012) ......................................................... 25

*Int'l Genomics Consortium v. United States,
    2012 U.S. Claims LEXIS 583 (2012)............... 4, 11, 16, 17, 18, 21, 22

Int'l Industrial Park, Inc. v. United States,
    95 Fed. Cl. 63 (2010)......................................................................... 10

*Chief Authorities are Designated with an Asterisk*

K-mar Industries, Inc. United States,
        752 F. Supp. 2d 1207 (2010) .................................................. 11, 15, 16

Lujan v. Defenders of Wildlife,
        504 U.S. 555, 112 S. Ct. 2130; 119 L. Ed. 2d 351 (1992) ................ 25

MCI v. United States,
        878 F.2d 362 (Fed. Cir. 1989) ............................................................ 24

Nat'l Credit Union Admin. v. First Nat'l Bank and Trust Co.,
        522 U.S. 479, 118 S. Ct. 927, 140 L. Ed. 2d 1 (1998) ................ 29, 30

Resource Conservation Group LLC v. United States,
        597 F.3d 1238 (Fed. Cir. 2010) .................................................... 20, 21

Rex Service Corp. v. United States,
        448 F.3d 1305 (Fed. Cir. 2006) ......................................................... 24

Rothe Dev., Inc. v. U.S. Dep't of Defense,
        666 F.3d 336 (5th Cir. 2011) ........................................... 17, 18, 19, 20

Santa Barbara Applied Research v. United States,
        No. 11-86C, 2011 U.S. Claims LEXIS 732 (May 4, 2011) ......... 30, 31

Swiss Nat. Ins. Co. v. Miller,
        289 F. 571 (D.C. Cir. 1923) .............................................................. 10

Triad Logistics Servs. Corp. v. United States,
        No. 11-43C, 2012 U.S. Claims LEXIS 393 (Feb. 29, 2012) ............. 31

United States v. Wilson,
        290 F.3d 347 (D.C. Cir. 2002) ...................................................... 7, 12

Vero Technical Support, Inc. v. U.S. Dept of Defense,
        437 F. App'x. 766 (11th Cir. 2011).............................. 8, 17, 18, 19, 20

**STATUTES**

10 U.S.C. § 129a............................................................ 3, 4, 19, 28, 29, 30, 31

10 U.S.C. § 2461........................................................................... 25, 26

10 U.S.C. § 2463..................................................... 3, 4, 28, 29, 30, 31

28 U.S.C. § 1491................................................................................... 21

*28 U.S.C. § 1491(b)(1) ..................................... 1, 4, 5, 14, 17, 18, 22, 23, 24

31 U.S.C. § 3551(2)(A) ................................................................ 23

*41 U.S.C. § 111...................... 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 16, 18

41 U.S.C. § 403(2) ............................................... 10, 15, 17, 19, 20

41 U.S.C. § 403(16) .................................................................... 16

**REGULATIONS**

FAR 4.804-5 ............................................................................... 1, 7

**OTHER AUTHORITY**

Omnibus Appropriations Act, 2009,
Pub. L. No. 111-8 § 737, 123 Stat. 524, 691 (2009) .............................. 26, 27

# GLOSSARY OF ABBREVIATIONS

ADRA        Administrative Dispute Resolution Act

APA         Administrative Procedure Act

CICA        Competition in Contracting Act

COTS        Commercial Off-The-Self Software

DoD         U.S. Department of Defense

RFI         Request for Information

USCFC       U.S. Court of Federal Claims

R.          Document number in the District Court record

## SUMMARY OF REPLY ARGUMENT

The USCFC lacks § 1491(b)(1) jurisdiction because Fisher-Cal's action: (A) is not contesting a "procurement or proposed procurement"; and (B) is not "in connection with a procurement or proposed procurement", regardless of the sweeping scope of the "in connection with" language of § 1491(b)(1). Instead, this action concerns the Government's determination to select insourcing over contracting to obtain the multimedia services. Therefore, this APA action is properly before the District Court.

Contrary to the Government's assertion, a procurement does not exist where services are obtained by insourcing or during the deliberative process of whether there is a need for the services and the means for obtaining them. Under section 111, a procurement is defined as an ongoing process of acquiring (first clause) by contract (third clause). Under the statute's first clause, each stage of the process shares a common path, which the statute's third clause describes as contracting. Under § 111's first and third clauses, each stage of the process of acquiring is described as having the potential to result in a contract award, and end with "contract completion or closeout," a term of art in federal government contracts (See FAR 4.804-5). Congress intentionally omitted language from § 111 that describes the end of *insourcing*, such as "completion of employee's services and insourcing

1

closeout."  Instead, Congress included specific language in the statute that provides specific illustrations – "contract completion and closeout" – that describes the end of the "process of acquiring" solely in terms of <u>contracting</u> – the opposite to insourcing.  As the statute defines procurement as contracting acquisition, the statute assumes that the Government has made a decision that it has a need for the property or services, and that it will obtain such through the contracting acquisition process.  The deliberative process of these decisions is excluded from § 111's definition of procurement.

Next, contrary to the Government's position, the statute's second clause, which establishes the beginning of the process of acquiring, does not encompass deliberating whether or not the Government has a need for the property or services.  The second clause states that the process of acquiring begins with "determining a need for property or services" (as opposed to whether or not the Government has a need).  Thus, after the government has made a decision that it has a need for the services and it will obtain them via the contracting acquisition process, as held by Federal Circuit, the statute's second clause (determining a need) encompasses the Government's determination of the specifications of the property or services that are to be acquired that meet the Government's needs.  Thus, each of the statute's three

2

clauses assumes that the Government has already determined it has a need for the services, and that it will obtain them using the federal contracting acquisition process.    Therefore, the Government's deliberation of and decision to insource rather than use the contracting acquisition process is not a procurement under section 111.

The Government incorrectly applied the law regarding justiciability. Fisher-Cal has Article III and prudential standing in District Court.  There is no funding bar to Fisher-Cal's claim under the 2009 Omnibus Appropriations Act and this action is not moot.

## REPLY ARGUMENT

**A.    THE DECISION THAT THE GOVERNMENT IS MAKING UNDER 10 U.S.C. §§ 129A, 2463 IS WHETHER TO USE INSOURCING OR THE CONTRACTING ACQUISITION PROCESS TO OBTAIN THE MULTIMEDIA SERVICES, AND APPELLANT DID NOT ARGUE THAT THIS DECISION IS MADE BEFORE APPELLEE DECIDES WHETHER IT HAS A NEED FOR THE SERVICES**

Contrary to the Government's assertion, the decision that the Government is making here is not "contemplating . . . whether to obtain services . . . ."  See Appellee's Brief at 13 ("The decision it is contemplating is whether to obtain services that it lacks, and then if there is a need, where to obtain those services.")  See also, Appellee's Brief at 4, 9, 10 and 15. Rather, the decision that the Government is making here in application of 10

U.S.C. §§ 129a, 2463 is whether to select insourcing or the federal contracting acquisition process to obtain the services, which is the only decision that is under contest in this action.[1]

Also, contrary to the Government's assertion, Appellant is not arguing that the Government's decision as to how to obtain the services (e.g., insourcing or contracting) is made before it decides whether it has a need for the services. Appellant has not "put[] the cart before the horse . . . ." See Appellee's Brief at 4. Rather, as discussed below and in Appellant's brief, the face of the statute assumes that such decisions have been made, and under the statute, the deliberations preceding these decisions are not part of the statute's definition of procurement. See, Appellant's Brief at 43 (discussion of holding of Int'l Genomics Consortium that an "agency decision to not procure a product or service" is not encompassed within § 111's definition of procurement for purposes of 1491(b)(1) Tucker Act jurisdiction). See also, Appellant's Brief at 26 (deliberation of whether to use insourcing or the federal contracting acquisition process to obtain the services "is not encompassed by 41 U.S.C. § 111's definition of

---

[1] This action contests whether the Government's decision to select insourcing over the federal contracting acquisition process to obtain the services violated 10 U.S.C. §§ 129a and 2463. R.1 at 9, 10, and 16-18. See Appellant's Brief at 3-5, 9 (Complaint). See also, Appellee's Brief at 3. See also, R.13 at 2 (Mem. Op.).

procurement" and deciding whether to use contracting acquisition process is not "up for debate" under the statute).   <u>See also</u>, Appellant's Brief at 7.

**B.     APPELLEE'S INTERPRETATION OF 41 U.S.C. § 111's DEFINITION OF PROCUREMENT FAILS TO COMPORT WITH CASE PRECEDENT AND FUNDAMENTAL CANNONS OF CONSTRUCTION, CREATING CONFLICTS WITH THE STATUTE AND LEGISLATIVE INTENT**

Whether the USCFC has exclusive Tucker Act jurisdiction to hear this action (rather than APA jurisdiction at the District Court) turns on whether the Government's decision to use its own resources (i.e., insourcing) as the method to obtain the multi-media services, rather than the federal contracting acquisition process, is considered a "procurement or proposed procurement" under the Tucker Act, 28 U.S.C. § 1491(b)(1).   <u>See</u> Appellant's Brief at 9-13.  Courts apply § 111's definition of procurement in establishing Tucker Act jurisdiction.   <u>See</u> Appellant's Brief at 10.   <u>See</u> Appellee's Brief at 6-7.

The act of "acquiring" property/services is identified in the primary clause of 41 U.S.C. § 111's definition of procurement to be comprised of "all stages of the process of acquiring"; the second and third clauses state this process has a "beginning" and "ending" stage:

In this subtitle, the term "procurement" includes [1] all stages of the process of acquiring property or services, [2] beginning with the process for

5

determining a need for property or services and [3]
ending with contract completion and closeout.

1.   **Based on the First and Third Clauses, Section 111's
     Use of the Term "Acquiring" Reflects that it Pertains
     Solely to Contracting**

Section 111's definition of procurement states that the final stage of

the acquisition process is "contract completion and closeout." To the extent

argued by Appellee, Appellant agrees that a stage of the acquisition process

need not necessarily reach contract completion or closeout in order for the

particular acquisition stage to fall within § 111's definition of procurement.

See Appellee's Brief at 8, 14; See Appellant's Brief at 16-18 (discussing

"process of acquiring").[2]

The Government argues that because the first clause of the

statute – "process of acquiring" – pertains to property or services, and the

first clause is silent on whether the property or services will be accomplished

by federal employees or private contractors, that necessarily means that

under § 111's definition, a procurement exists where property or services are

obtained by either insourcing or contracting. See Appellee's Brief at 7-8.

---

[2] Contrary to the Government's implied assertion, Appellant did not argue
that the process of acquiring necessarily must end with contract completion
or closeout. See Appellee's Brief at 14 ("Fisher-Cal extracts from this
clause the conclusion that entire definition must be limited to contracting
because that is where the process 'complete[es].'")

_Thus, according to the Government a procurement exists where property or_
_services are obtained by insourcing_.  Id.  See also, Appellee's Brief at 8
("nothing about . . . [the statute] suggests a limitation that the [acquisition]
process must be aimed at contracting for the services to qualify").  For
reasons discussed below, the Government's position is misplaced.

"It is 'a 'fundamental canon of statutory construction that the words of
a statute must be read in their context and with a view to their place in the
overall statutory scheme.''"  United States v. Wilson, 290 F.3d 347, 355
(D.C. Cir. 2002) (internal quotations omitted).  See e.g., Appellant's Brief at
21 (additional case citations).  On its face, § 111 defines "acquiring" as
obtaining by contract, and this is the sole, definitive, operative method under
the statute by which goods or services will be obtained.  See Appellant's
Brief at 17, 26.  On its face, § 111's definition of "procurement" specifies
that the "process of acquiring" property or services (first clause) pertains to
contracting (third clause).  The statute's first clause specifies "all stages of
the process of acquiring" and its third clause specifies "contract completion
and closeout."  Contract "closeout" is a term of art in federal government
contracting.  See FAR 4.804-5, which is entitled "Procedures for Closing
Out Contract Files", and establishes numerous stages of such process.  Thus,
the express language of the statute indicates that the process of acquiring is

comprised of a *continuum of events* – i.e., "all stages of the process of acquiring" (first clause) – each of which shares a common path – the *potential* to result (but need not necessarily result) in a contract award (third clause) and "contract completion and closeout" (third clause).    Thus, although a stage of the process of acquiring need not necessarily go all the way to the end for that stage to be included within the process of acquiring (See Appellee's Brief at 7, 14), all of the stages share this common path, and that path is descriptive solely of contracting.    Cf. Appellee's Brief at 14 ("there is no apparent synergy that the two clauses create that adds up to more than what each provides on its own.") The fact that the statute identifies the ending of the process to be "contract completion and closeout" (third clause) is descriptive of what "all stages of the process of acquiring" (first clause) is all about – contracting.  In-sourcing is not on the same path as any of the stages of the process of acquiring, as each stage is all about contracting.    In-sourcing has no potential to result in a contract award, contract completion or contract closeout.    Insourcing is the opposite of outsourcing.    "[I]n-sourcing in and of itself [does] . . . not involve the procurement of goods or services . . . ."  See Vero Technical Support, Inc. v. U.S. Dep't of Defense, 437 F.App'x. 766, 770 (11th Cir. 2011), quoting, Harris Enters., Inc. v. U.S. Dep't of Defense, No. 10-cv-573, 2011 U.S. Dist.

8

LEXIS 143574 (W.D. Tex. Oct. 12, 2010).  Accordingly, the Government's interpretation is at fundamental odds with § 111's definition of procurement.

The Government argues, with no legal support, that under the statute's use of the term, "acquiring" does not mean obtaining the services solely by contracting, and instead "comfortably" means obtaining services by either contracting or insourcing.  See Appellee's Brief at 13-14. The Government's out-of-context interpretation must fail.  When properly read within the context of the statute, "acquiring" pertains to contracting and not insourcing. Under § 111, the term "acquiring" is described to have a process, i.e., "process of acquiring."  The statute provides a description of the conclusion of the "process of acquiring" for only one of these two methods – contracting – in terms of the "contract completion" and the process necessary to "closeout" the contract, which, as previously discussed, is a term of art in federal government contracting.  *If the drafters intended to include in § 111's definition of procurement a description of the end of insourcing it clearly could have done so by stating, for example, "completion of employees' services and insourcing closeout".*  Insourcing does not fall within the definition of the term procurement as the drafters intentionally omitted language describing the end of *insourcing*.  Instead, the drafters included specific language that provides specific illustrations that

describe the end of the "process of acquiring" solely in terms of <u>contracting</u> – the <u>opposite</u> to insourcing.  <u>See</u> <u>Swiss Nat. Ins. Co. v. Miller</u>, 289 F. 571, 574 (D.C. Cir. 1923) (provision of an act specified a particular class of corporations for which the act applied, which, under the legal maxim *expressio unius est exclusio alterius*, would impliedly exclude therefrom "all corporations of an <u>opposite</u> character.")

### 2.    Appellate and USCFC Case Law Support Fisher-Cal's Interpretation of § 111's Definition of Procurement

The Federal Circuit has recognized that fundamentally, 41 U.S.C. § 403(2)'s definition of the procurement involves "any stage of the federal *contracting* acquisition process".  See <u>Distributed Solutions II</u>, 539 F.3d at 1346.  See Appellant's Brief at 16.  <u>Cf.</u> Appellee's Brief (incorrectly stating: "No Appellate Decisions Support Fisher-Cal's Reading".)  <u>See also</u>, <u>Int'l Industrial Park, Inc. v. United States</u>, 95 Fed. Cl. 63 (2010) where the USCFC interpreted the term "acquiring" under the predecessor statute, 41 U.S.C. § 403(2), to signify the act of "obtaining something that [the acquirer] . . . would not have had absent the <u>contract</u>."  <u>Id.</u> at 67 (emphasis added).   <u>See also</u>, Appellant's Brief at 7.  <u>*Cf. Appellee's Brief at 7-8*</u> *(Government argues that a procurement exists where property or services are obtained by insourcing)*.   <u>See</u> <u>also</u>, Appellant's Brief at 41-44

10

(discussing USCFC holding in <u>Int'l Genomics Consortium v. United States</u>, 2012 U.S. Claims LEXIS 583 that a decision to not procure is not a procurement).

### 3. The Government's Deliberation of Whether There is a Need for Services is Not Encompassed Within Section 111's Second Clause Based on the Language Contained in the Statute's First and Second Clauses

According to the Government's interpretation, § 111's second clause – "beginning with the process for determining a need for property or services" – encompasses the Government's "determining <u>whether</u> particular services are needed at all." <u>See</u> Appellee's Brief at 4.

A court "ordinarily resist[s] reading words or elements into a statute that do not appear on its face". <u>Bates v. United States</u>, 552 U.S. 23, 29 (1997). Here, in order to arrive at the Government's conclusion, the underscored phrase "<u>whether or not there is</u>" must be added to the second clause, resulting in the following: "beginning with the process for determining [<u>whether or not there is</u>] a need for property or services." Thus, the Government's interpretation is unreasonable. As discussed below, the Government unsuccessfully made the same argument in <u>K-mar Industries, Inc. v. United States</u>, 752 F. Supp. 2d 1207 (2010). Also, the statute's second clause does not encompass a determination of how to obtain the services (insourcing or contracting). <u>See</u> Appellant's Brief at 22-26. When

11

read in context of the first/third clauses, the second clause involves the Government's "determining a need" by establishing the specifications of the property/services (e.g., color, type, brand, size) that meet its needs and has decided to acquire.  See e.g., Distributed Solutions II, supra.

Additionally, for reasons discussed below, the Government's interpretation of the second clause conflicts with the statute's first clause. "It is 'a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.''"  United States v. Wilson, 290 F.3d 347, 355 (D.C. Cir. 2002) (internal citations omitted).

**4.     Neither the Government's Deliberation of Whether There is a Need for the Services Nor its Deliberation of How to Obtain the Them (Insourcing *versus* Contracting Acquisition Process) is Encompassed Within § 111's First Clause**

Appellee argues that the Government has made a decision that it has a need for the services, as this is the preliminary step to deciding how to obtain the services, i.e., whether to select insourcing or the federal contracting acquisition process to obtain the services.  Thus, according to the government because it has made a decision that it has a need for the services, based on the language of the statute's second clause – "beginning with the process for determining a need for property or services" – a procurement has

begun.  See Appellee's Brief at 7, 10 and 15.  Also, Appellee makes the contradictory statement that the Government's decision as to whether it has a need for the services is not "separate" from its decision as to how it should obtain the services, via insourcing or contracting.  See Appellee's Brief at 4. See also, Appellee's Brief at 13 (referring to both decisions as a single decision).  Appellee also argues that under the statute's second clause, procurement begins as far back as during the deliberative process where the Government has not yet determined that it has a need for the services, stating:

> The plain meaning of th[e] language [of the second clause] is that the government has not yet determined, nor need not have yet determined, that it needs the services at issue in order for the procurement process to have begun.

See Appellee's Brief at 7.  The Government's arguments conflict with the express language of § 111.

The Government's interpretation runs contrary to the language of the statute.  As previously argued, under the statute, acquiring means obtaining by contracting.  The statute is all about the process of acquiring by contracting.  Thus, in order for there to be a procurement, the statute assumes three things are met:  (A) that the Government has in fact made decisions;  _and_ (B) that the two decisions made are that (i) there is a need for

13

the services and (ii) that the services will be obtained by means of the contracting acquisition process.  If the government has not yet decided that it has a need for the services, there is no procurement.  Also, there is no procurement where the Government decides that it has a need for the services, but (a) decides that it will obtain them through insourcing, or (b) has not yet made an actual decision of whether it will select insourcing or the contracting acquisition process.  See Appellant's Brief at 26 (contract acquisition is the "sole definitive and operative" method for obtaining the services under the statute; the method is not "up for debate" under the statute).  Thus, the Government's interpretation conflicts with the language of the statute.

Also, the Government argues that even if they are separate decisions, the Government's decision that it has a need for the services, standing alone, is the start of a procurement, and therefore, the Government's decision as to select insourcing over contracting as the method for obtaining the multimedia services is "in connection with" such a procurement.  See Appellee's Brief at 9.  Thus, according to the Government, § 1491(b)(1) affords the USCFC with Tucker Act jurisdiction.  Id. at 8.  As explained in the above paragraph, the Government's position conflicts with the fundamental aspect of § 111's definition of procurement: the Government

14

must have decided both that: (i) it has a need for the services, and (ii) it will obtain them via the contracting acquisition process.[3]

### 5.     The Courts Have Rejected the Same Arguments That the Government is Making this Appeal

The Government unsuccessfully made the same argument in <u>K-Mar Industries, Inc. United States</u>, 752 F. Supp. 2d 1207 (2010). There, the Government argued that under 403(2), the predecessor statute, the definition of procurement includes a decision to insource because the statute's second clause "begins with a decision by the agency as to <u>whether or not</u> there is a need to acquire property or services." <u>Id.</u> at 1212. The court stated that although it was a "reasoned argument", it found that it was necessary to reject the argument in light of 403(2)'s express language, explaining

> For one thing, the portion of the § 403(2) definition that comes after the comma could have provided, but does not, that the process of acquiring services begins with the process of determining "*whether there is a need*" for property or services. Instead, the definition provides that the acquisition process begins with the process for determining a need for property or services.
>
> Also, it is arguable that the part of the definition that comes after the comma does not apply at all

---

[3] Also, for reasons previously discussed, the Government's argument must fail as it is premised on its fallacious interpretation of the second clause to encompass a decision of "determining [<u>whether or not there is</u>] a need for property or services."

15

except to the extent that there is an *on-going process of acquiring property or services as required by the part of the definition that precedes the comma*.

Also, the portion of the definition that comes after the comma describes the acquisition process as "ending with contract completion and closeout." The definition says nothing about the possibility that the acquisition process might end with a decision not to acquire services or to insource.

Important , also, is the fact that 41 U.S.C. § 403(16) of the OFFPA defines "acquisition" – the critical concept within the definition of 'procurement' – exclusively in terms of purchasing or leasing by contract. See 41 U.S.C. § 403(16).

Id. at 1212. Also, the protester in Int'l Genomics Consortium v. United States, 2012 U.S. Claims LEXIS 583, unsuccessfully argued that based on Distributed Solutions II, an agency's decision to not procure property or services is encompassed within § 111's definition of procurement for purposes of Tucker Act jurisdiction. The Court rejected the argument, holding that the protester's reading of Distributed Solutions II was too broad, unlocking Pandora's box. Id. at 21-23. Cf. Appellee's Brief at 7 (The plain meaning of th[e] language [of the statute's second clause] is that the government has not yet determined, nor need not have yet determined, that it needs the services at issue in order for the procurement process to have begun). For reasons set forth in Int'l Genomics Consortium, the lower

court's decision that is the subject of this appeal and the decisions of <u>Rothe Dev., Inc. v. U.S. Dep't of Defense</u>, 666 F.3d 336 (5th Cir. 2011) and <u>Vero Technical Support, Inc. v. U.S. Dept of Defense</u>, 437 F.App'x. 766 (11th Cir. 2011) are misplaced. The Court also held that a "decision to not procure a product or service" is not encompassed within 403(2)'s definition of the term procurement for purposes of 1491(b)(1) Tucker Act jurisdiction. <u>Id.</u> at 23-24. See Appellant's Brief at 41-44 (discussion of <u>Int'l Genomics Consortium</u>).

### 6.   Appellant is Not Arguing that the Government's Decision as to How to Obtain the Services is Made Before it Decides Whether There  is a Need for the Services

Contrary to the Government's assertion, Appellant is not arguing that the Government's decision as to how to obtain the services (e.g., insourcing or contracting) is made before it decides whether it has a need for the services. Appellant has not "put[] the cart before the horse . . . ." <u>See</u> Appellee's Brief at 4. Rather, simply put, as explained above, the face of the statute assumes that the decisions have actually been made and the decisions are as follows:  (i) there is a need for the services; and (ii) the services will be obtained via the contracting acquisition process. Also, as explained

above, the *deliberative process* making these two positive decisions is not part of the statute's definition of procurement.[4]

**C.     THE <u>VERO</u> AND <u>ROTHE</u> DECISIONS PERPETUATE A MISAPPLICATION OF <u>DISTRIBUTED SOLUTIONS II</u> BECAUSE THEY RELY UPON THE <u>HARRIS</u> DECISION WHERE THE MISAPPLICATION FIRST BEGAN**

The misapplication of <u>Distributed Solutions II</u> began with the <u>Harris</u> court, which was then relied upon by the <u>Vero</u> court.  <u>See</u> Appellant's Brief at 28.  Afterwards, the <u>Rothe</u> court relied upon the <u>Vero</u> court's misapplication of <u>Distributed Solutions II</u>.  <u>See</u> Appellant's Brief at 29.  This new and evolving case law, that the Government's decision to select insourcing or contracting as the method to obtain property or services is a procurement as it fits with the statute's second clause, is flawed starting from inception with the <u>Harris</u> court, which the lower court and Fifth and Eleventh Circuits have endorsed.  <u>See</u> Appellant's Brief at 28-29, 36-37; <u>See</u> Appellee's Brief (no dispute).

---

[4] Appellant made similar arguments in its brief.  <u>See</u> <u>e.g.</u>, Appellant's Brief at 26 (concluding that decision as to whether to use insourcing or the federal contracting acquisition process to obtain the services "is not encompassed by 41 U.S.C. § 111's definition of procurement.") <u>See</u> <u>also</u>, Appellant's Brief at 7; <u>See</u> <u>also</u>, Appellant's Brief at 43 (discussion of holding of <u>Int'l Genomics Consortium</u> that an "agency decision to not procure a product or service" is not encompassed within § 111's definition of procurement for purposes of 1491(b)(1) Tucker Act jurisdiction).

The <u>Harris</u> court arrived at the conclusion that 403(2)'s second clause, "determining a need for property or services," is equivalent to "determining a need [<u>for acquiring</u>] of property or services" with the underscored language "for acquiring" added to the clause. The <u>Harris</u> court states:

> While in-sourcing in and of itself may not involve the procurement of goods or services, a decision whether or not to in-source involves the process for determining a need ***for acquisition*** of property or services and, consequently, involves a 'procurement' or a 'proposed procurement' regardless of whether property or services are actually procured. See <u>Distributed Solutions, Inc.</u>, 539 F.3d at 1342 ("[s]tatute does not require an actual procurement" but rather 'explicitly contemplates the ability to protest <u>these kinds of pre-procurement</u> decisions by vesting jurisdiction in the Court of Federal Claims over 'proposed procurement'").

<u>See</u> <u>Harris</u>, <u>supra</u> at LEXIS 9-10. <u>See</u> <u>Vero</u>, 437 F.App'x. at 770, <u>quoting</u>, <u>Harris</u>, supra. <u>See also</u>, <u>Rothe</u>, 666 F.3d at 339, <u>citing</u>, <u>Vero</u>, 437 F.App'x. at 769-70. <u>See</u> Appellant's Brief at 28-29, 37; <u>See</u> Appellee's Brief (no dispute). The <u>Harris</u> court arrived as this conclusion by improperly equating the Government's § 129a cost analysis with the RFI discussed in <u>Distributed Solutions II</u>:

> In the present case, although an RFI was not issued, the government conducted a cost analysis pursuant to 10 U.S.C. § 129a to determine whether or not to procure services, ultimately opting to terminate procuring services from HESA and

> commence in-sourcing; arguably, this cost analysis, much like the RFI in <u>Distributed Solutions Inc.</u> that was solely for market research purposes with no intent to award a contract, pertains to the beginning of the procurement process and, therefore, is part of the challenged procurement process.

<u>Harris</u>, <u>supra</u>, at LEXIS 16-17; <u>See also</u>, Appellant's Brief at 37; <u>See</u> Appellee's Brief (no dispute).  As argued in Appellant's brief (p. 38), the <u>Harris</u> court's determination that the Government's 129a cost analysis is equivalent to the RFI solicitation issued in <u>Distributed Solutions II</u> is illogical and contradicts the Government's own argument put forth in <u>Distributed Solutions II</u> that the RFI was "not part of any procurement process".  <u>See</u> <u>Distributed Solutions II</u>, <u>supra</u>, at 1346.  <u>See</u> Appellee's Brief (no dispute).  The lower court and <u>Vero</u> and <u>Rothe</u> appellate decisions perpetuate the <u>Harris</u> court's improper application of <u>Distributed Solutions II</u>.

## D.    APPELLEE MADE MISTATATEMENTS CONCERNING VARIOUS CASES

Without providing any citation to Appellant's brief, the Government claims that Fisher-Cal relied upon <u>Resource Conservation Group LLC v. United States</u>, 597 F.3d 1238 (Fed. Cir. 2010) for the Federal Circuit's analytical application of 403(2)'s definition of procurement to the facts of that case as being equally applicable to the facts of the current appeal.  <u>See</u>

Appellee's Brief at 13, 15-16.  Fisher-Cal did nothing of the sort, and does not do so in this Reply Brief.   Instead, Fisher-Cal discussed <u>Resource Conservation</u> in the following limited manner:   (1) the court's general discussion of statutory construction, such as its use of Blacks Law Dictionary to define the term procurement as used in the ADRA (<u>See</u> Appellant's Brief at 11, 17 and 25); (2) its discussion of <u>Distributed Solutions II</u> as it pertains to using 403(2)'s definition of procurement for Tucker Act purposes (<u>See</u> Appellant's Brief at 11;  <u>See also</u> Appellee's Brief at 7); (3) the legislative history of the ADRA, such as the fact that the issue of nonprocurement bid protests is mentioned nowhere in the legislative history   (<u>See</u> Appellant's Brief at 11-13); and (4)   other principles of statutory construction discussed by the Court (<u>See</u> Appellant's Brief at 23-24).

Next, the Government argues that <u>Int'l Genomics Consortium v. United States</u>, 2012 U.S. Claims LEXIS 583, is inapplicable here because that case "turned on a jurisdictional issue different from the scope of 'procurement,' specifically on whether the plaintiff company was an 'interested party' within the meaning of Section 1491."   <u>See</u> Appellee's Brief at 17.  The case did not "turn on" the issue of "interested party," and, contrary to the Government's assertion (<u>See</u> <u>id.</u>), its decision concerning the

term procurement is not "simply dicta". The Court concluded that there was no 1491(b)(1) jurisdiction based on _two_ findings: (1) protester was not an interested party, and (2) there was no procurement.[5] Either of these findings could be dispositive to whether the court lacked 1491(b)(1) jurisdiction to hear the protest.

The Government's argument regarding Distributed Solutions II is unavailing. There is nothing in Distributed Solutions II that indicates that the Government was contemplating insourcing the integration of the COTS software that the Government described in the RFI for acquisition from outside vendors. The "enable integration" language quoted by the Government discussed in Distributed Solutions II, supra at 1342 (See Appellee's Brief at 11) is, simply put, not about insourcing. A task order issued under an outside contract "required SRA . . . to enable integration of . . . [COTS] packages. . . ." See Distributed Solutions II, supra at 1342; Cf. Appellee's Brief at 11. And, even if the "enable integration" language, as argued by the Government, suggests that SRA might use federal employees to assist in the integration, this bears no relation to insourcing. Id.

---

[5] The USCFC addressed this because the protester raised the issue, (See Int'l Genomics Consortium, at 21), and significantly, whether there was a procurement is one of the elements of 1491(b)(1) jurisdiction. See Appellee's Brief at 18.

## E.    FISHER-CAL HAS ARTICLE III STANDING REGARDLESS OF ITS INTERESTED PARTY STATUS AT THE USCFC AS THE TEST FOR EACH IS DIFFERENT

The government twists Fisher-Cal's argument that it is not an "interested party" under the Tucker Act to "strongly suggest" that Fisher-Cal lacks Article III standing for its claim brought in district court under the APA.  Appellee Brief at 20-21.  At the lower court, Fisher-Cal argued that it was not an "interested party" under the Tucker Act because the decision to insource necessarily means there is no solicitation through which Fisher-Cal can expect to submit a competitive offer.  (R.8 at 21-22).

While not defined by the Tucker Act, CICA's definition of "interested party" applies to the Tucker Act, and thus "standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  See American Federation of Government Employees v. United States, 258 F.3d 1294, 1298, 1301 (Fed. Cir. 2001); See also, 31 U.S.C. § 3551(2)(A).

Fisher-Cal is not an interested party under § 1491(b)(1) for the same reason that the basis for its complaint is not "in connection with a procurement or proposed procurement"; the Government's decision not to acquire services is not a procurement or proposed procurement.  Fisher-Cal

23

can simply not be an "actual or prospective bidder" given the fact that there is no procurement or proposed procurement for which to bid or expect to bid.  To qualify as a prospective bidder, the Federal Circuit has stated that "one who has not actually submitted an offer must be *expecting* to submit an offer prior to the closing date of the solicitation."  Rex Service Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (emphasis in original), citing MCI v. United States, 878 F.2d 362, 365 (Fed. Cir. 1989).  Due to the fact that the Government has decided to **not acquire** any of the multi-media services, there is no procurement solicitation upon which Fisher-Cal can bid or expect to bid on.  Accordingly, Fisher-Cal is not an interested party under the Tucker Act.

The government chose not to address whether it believes Fisher-Cal is an interested party under the Tucker Act, instead arguing that Fisher-Cal's own argument undercuts its ability to demonstrate Article III standing in the district court.  Appellee Brief at 20-21.  The Government's argument is not persuasive because the USCFC "interested party" test and the Article III standing test in district court are unrelated.  Recognition of Fisher-Cal's Article III standing is consistent with a finding that Fisher-Cal is not an interested party under the Tucker Act, 28 U.S.C. § 1491(b)(1).

Fisher-Cal has Article III standing, which requires:

> [that] [p]laintiff must show (1) an injury in fact
> that is "concrete and particularized" and "actual or
> imminent"; (2) that the injury is "fairly traceable"
> to the defendants' challenged conduct; and (3) that
> the injury is likely to be "redressed by a favorable
> decision."

See In re Navy Chaplaincy, 697 F.3d 1171, 1175 (D.C. Cir. 2012), citing

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Contrary to

the Government's assertion, Fisher-Cal has suffered a particularized injury

under Article III because the agency's improper conduct has deprived

Fisher-Cal of economic opportunities to compete for federal government

contracts for the multimedia services.   The injury is obviously fairly

traceable to the Government's conduct, and as discussed in Reply

Arguments F and G, contrary to the Government's assertions, the injury can

be redressed by a favorable decision and the controversy is not moot.

## F.   THE 2009 OMNIBUS APPROPRIATIONS ACT IN CONJUNCTION WITH 10 U.S.C. § 2461 DO NOT CREATE A "FUNDING BAR" TO FISHER-CAL'S CLAIM

The government argues that Fisher-Cal's action is "effectively either

moot or not judicially redressable" because of a "funding bar" on

public-private cost comparison studies.  Appellee's Brief at 21-22.  More

specifically, the government first points out that 10 U.S.C. § 2461 requires

that a "public-private competition" must be conducted as a prerequisite before any function currently performed by DoD civilian employees can be converted to contractor performance.  <u>Id.</u> at 21.  The government then points to an uncodified section of the Omnibus Appropriations Act of 2009.  <u>Id.</u> at 22-22; Omnibus Appropriations Act, 2009, Pub. L. No. 111-8 § 737, 123 Stat. 524, 691 (2009).  The government concludes that the "combined effect" of the two statutes is that Fisher-Cal's claim is either moot or not judicially redressable because a cost comparison study to convert the work currently performed by DoD civilian employees to the private sector is required by 10 U.S.C. § 2461, yet at the same time subject to a "funding bar" by the § 737 of the Omnibus Appropriations Act of 2009.  <u>See</u> Appellee's Brief at 21-22.  In other words, the government states that Fisher-Cal's remedy is legally impermissible or unavailable.

The government's argument is unavailing.  Fisher-Cal seeks judicial review to require the agency to correct errors in its original cost comparison. Section 737 of the Omnibus Appropriations Act of 2009 does not bar Fisher-Cal's remedy sought for two reasons. First, the funding bar only applies to using applicable funds to "<u>begin or announce</u>" a public-private competition.  <u>See</u> Omnibus Appropriations Act, 2009, 123 Stat. 524, 691 (2009) (emphasis added).  Fisher-Cal is not asking for funds to be spent to

"begin" or "announce" a study; Fisher-Cal is instead asking for errors to be corrected in a study that has already been initiated. Second, the original cost comparison study involved a comparison of public section costs to private sector costs of work that was then being performed by contractors. Since § 737 does not bar public-private competitions when contractors are currently performing the work, it also does not bar the review of a public-private cost competition that occurred when contractors were performing the work.

## G.     FISHER-CAL'S ACTION IS NOT MOOT

The Government argues that Fisher-Cal's claims "appear moot or not redressable by the courts." <u>See</u> Appellee's Brief at 23. In support of this conclusion, the Government states that (1) "Fisher-Cal waited until its contract expired to file suit in April 2011" and that (2) "much of the work has now been completed." <u>Id.</u> Neither contention renders Fisher-Cal's claim moot.

Whether the contract had expired shortly prior to Fisher-Cal filing suit bears no relation to whether the case is moot. Mootness turns on whether "the facts of the case change such that the controversy ends or becomes unredressable." <u>Fund for Animals v. Bureau of Land Management</u>, 357 F. Supp. 2d 225, 230 (D.D.C. Sept. 7, 2004). Here, the controversy has not

ended. As previously stated, the Government has a need for the services, and that is not in dispute in this case. The Government admits that the multi-media services at issue is an <u>ongoing service</u> performed by Government employees. <u>See</u> Appellee's Brief at 23 ("much of the work has now been completed.") Thus, the injury to Appellant may be redressed if the Court finds that the Government conducted an improper economic analysis under §§ 129a and 2463 of private versus public sector costs. Assuming that a proper comparison shows the economic advantage of private sector contracting, the Government may issue a new competitive solicitation for which Fisher-Cal, the incumbent contractor, may submit a competing offer. <u>Cf.</u> <u>Fund for Animals</u>, 357 F. Supp. 2d at 230 (holding that plaintiffs' challenge of agency action concerning the gather and removal of wild horses from public lands was moot when the wild horses had already been "either sold or destroyed," therefore preventing a court to "reestablish the preexisting status quo.") Fisher-Cal acknowledges that if the government's need for the multi-media services ended, the case would likely be moot. However, that is not the case. Accordingly, Fisher-Cal's claim is not moot.

28

### H.      FISHER-CAL HAS PRUDENTIAL STANDING

The Government argues that Fisher-Cal lacks prudential standing because "contractors do not fall within the 'zone of interests' sought to be protected by 10 U.S.C. §§ 2463 and 129a", and Fisher-Cal cannot be within the zone of interests of 10 U.S.C. § 2463 because the statute "expressly sought to protect" DoD civilian employees, and Fisher-Cal's "interests are inconsistent" with those federal employees.  See Appellee's Brief at 22-23. The government's analysis misconstrues 10 U.S.C. § 2463 in its faulty application of the "zone of interests" test.

Fisher-Cal satisfies the zone of interest test.[6]  Appellant is "arguably within the zone of interests" of §§ 2463 and 129a because it affords protection to _both_ DoD civilian/military employees _and_ private sector incumbent contractors.  Cf. Appellee's Brief at 22 (§ 2463 benefits only DoD civilian employees).  These statutes protect private contractors, including incumbent contractors such as Fisher-Cal, by requiring compliance with a standard that prevents arbitrary agency decisions to convert the contracted services to in-sourced services.  See R.1 at 7.

---

[6]  See Nat'l Credit Union Admin. v. First Nat'l Bank and Trust Co., 522 U.S. 479, 488 (1998) (internal citation omitted) (under the APA, to satisfy prudential standing, plaintiff must show that it is "arguably within the zone of interests to be protected or regulated by the statute . . . in question").

In contrast, the Government makes the faulty conclusion that since the statute makes "express" reference to the interests of DoD civilian employees, the statute does not or cannot *also* address and protect – either explicitly or implicitly – the interests of contractors.  In actuality, the very Supreme Court standard cited by Appellee to advance its argument acknowledges that 1) there can be multiple purposes in a statute and 2) those purposes can be expressed implicitly.  Appellee's Brief at 22-23, citing Nat'l Credit Union Admin., 522 U.S. at 491 ("the 'zone of interests' test 'denies a right of review if the plaintiff's interests are . . . inconsistent with the **purposes implicit** in the statute'") (emphasis added).  Section § 2463 clearly covers the interests of both parties because – while it provides "special consideration" for use of DoD civilian employees in certain situations – it simultaneously protects contractors from arbitrary insourcing decisions.  10 U.S.C. § 2463 (2010).

The USCFC has provided support to Fisher-Cal's argument that it satisfies the zone of interests test.  In Santa Barbara, the USCFC held that the plaintiff contractor was within the zone of interests protected under 10 U.S.C. § 2463 or 10 U.S.C. § 129a, despite the court's finding that a showing of prudential standing was not necessary under the Tucker Act. See Santa Barbara Applied Research v. United States, No. 11-86C, 2011 U.S.

Claims LEXIS 732, *26-27 (May 4, 2011); See also Triad Logistics Servs. Corp. v. United States, No. 11-43C, 2012 U.S. Claims LEXIS 393, *78-85 (Feb. 29, 2012) (discussing whether plaintiff had prudential standing under 10 U.S.C. § 2463 and 10 U.S.C. § 129a, but dismissing on other grounds); But See Hallmark-Phoenix 3 v. United States, 99 Fed. Cl. 65, 72-77 (2011) (holding that contractors do not have prudential standing under 10 U.S.C. § 2463 and 10 U.S.C. § 129a).  Based on the foregoing, Fisher-Cal has clearly satisfied the "less-than-demanding" requirements for a plaintiff to fulfill the zone of interests test.  See Am. Chiropractic Ass's Inc. v. Leavitt, 431 F.3d 812, 816 (D.C. Cir. 2005) (referring to the "less-than-demanding zone-of-interest test").

## CONCLUSION

For the foregoing reasons, Appellant requests that this Honorable Court reverse the lower court's judgment and remand the case to the lower court for adjudication of the merits.

Respectfully Submitted

/s/ Lawrence J. Sklute
Lawrence J. Sklute
Sklute & Associates
1150 Connecticut Avenue, N.W., 9th Floor
Washington, D.C. 20036
(202) 637-1223

31

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*6,916*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[      ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[      ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: January 15, 2013          /s/Lawrence J. Sklute
                                 Lawrence J. Sklute

                                 *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 15th day of January, 2013, I caused this Page

Proof Reply Brief of Appellant to be filed electronically with the Clerk of the

Court using the CM/ECF System, which will send notice of such filing to the

following registered CM/ECF users:

R. Craig Lawrence
W. MarkNebeker, Assistant U.S. Attorney
OFFICE OF THE U.S. ATTORNEY
  CIVIL DIVISON
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7159

*Counsel for Appellees*

I further certify that I caused the required copies of the Page Proof Reply

Brief of Appellant to be hand filed with the Clerk of the Court.

/s/ Lawrence J. Sklute
Lawrence J. Sklute

*Counsel for Appellant*